# Richmond

MILDRED WOMBLE HASKINS v. CHARLES HOWARD HASKINS.

November 22, 1948.

Record No. 3377.

Present, All the Justices.

*James G. Martin & Sons,* for the appellant.

*Breeden & Hoffman,* for the appellee.

MILLER, J., delivered the opinion of the court.

A suit for divorce was instituted by appellee, Charles Howard Haskins, against appellant, Mildred Womble Haskins. He charged her with having committed adultery on September 20, 1946.

Appellant filed an answer and cross-bill. She denied the charge, and, in addition, alleged that he had been guilty of cruelty, desertion and adultery. Several acts of cruelty are set forth as having occurred on enumerated days in the years 1944 and 1945, and it is stated that he wilfully deserted her on November 1, 1945. It is further asserted that he committed adultery with one Audrey Cook in her apartment in Norfolk, Virginia, on seven specified nights during November and December, 1946. Therefore appellant prayed that appellee's bill be dismissed and a divorce and permanent alimony awarded her.

In answer to these charges, appellee denied the several alleged acts of cruelty, desertion and adultery. By way of justification for his departure from their home, he asserts that appellant was guilty of many acts of cruelty, both mental and physical, which forced him to leave.

The testimony was taken in deposition form and presented to the trial court. By decree of November 4,

1947, the charge of adultery against appellant was sustained, while the allegations of cruelty, desertion and adultery made by her in the cross-bill were found not to have been established. That decree reads, in part, as follows:

"It appearing to the Court * * * that the respondent, Mildred Womble Haskins, has been guilty of adultery as alleged in said bill of complaint and that the allegations of cruelty, desertion and adultery as alleged in said cross-bill have not been proved, the Court doth adjudge, order and decree, that said complaint, Charles Howard Haskins, be and he is hereby granted a divorce *a vinculo matrimonii* from the respondent, Mildred Womble Haskins, and it is further ordered that said cross-bill in this cause be and the same is hereby dismissed."

The evidence amply discloses that the chancellor was correct in concluding that appellant was guilty of adultery. It is, however, earnestly claimed by her that even though the evidence proved her misconduct, the testimony introduced in her behalf likewise shows that appellee was guilty of several of the acts of adultery charged in the cross-bill. She also says that it proved the cruelty alleged and discloses that he wilfully deserted her prior to any transgression on her part. This, she insists, establishes the defense of recrimination and precludes the awarding of a divorce to either party. She here prays that the decree granting to appellee an absolute divorce be reversed and that he be required to pay separate maintenance to her.

During September, 1946, almost a year after the separation of the parties, appellee employed detectives to watch his wife. On the first night of surveillance, evidence was obtained that brought about her arrest and conviction for adultery.

Immediately after appellant's conviction, she secured detectives to keep watch upon her husband. Close observation of his activities was maintained on numerous nights throughout November and December, 1946, and on

occasions thereafter. The evidence secured over a period of months is made the basis of seven charges of adultery with Audrey Cook at her apartment on the nights of November 4, 5, 6, and December 26, 28, 30 and 31, 1946.

Summarized, the testimony relied on to sustain the charges, shows that Audrey Cook was a divorcee about 33 years of age. She occupied an apartment with one Mary Shore. Appellant visited Mrs. Cook rather regularly over a period of months. This is disclosed by the testimony of the detectives and appellee readily admitted visiting her about twice a week.

The most damaging evidence against him is in respect to his visits on November 5th and 6th, and December 26th. On these evenings he called at about 8:00 or 9:00 o'clock and remained until midnight or thereabouts. The detectives testified that at times on the evenings of November 5th and December 26th, all lights were out in the apartment. However, it is not made clear by them as to whether they were in a position to ascertain whether the lights were on in some room or rooms so located as not to be observed.

On November 5th and 6th, appellee and Mrs. Cook were seen to enter the bedroom—this was ascertained by looking through an opening in the venetian blinds, yet the detectives say that both parties at all times were fully attired and that appellee was actually wearing his hat when he entered the bedroom.

On November 5th, the detectives did not remain for more than a minute or two after the parties entered the bedroom and hence did not ascertain whether they remained there for any length of time. They left with the intention of obtaining a warrant, but, at the police station, were advised to locate appellant and take her to the apartment as a witness. After finding appellant and returning with her at about 11:00 o'clock p. m., the lights were found on in the living room and no warrant was sworn out.

On November 6th, though the detectives did not leave the scene for quite a long time, the one who testified said

they were unable to tell whether appellee remained in the bedroom "one minute, ten minutes, or how long * * * ." Nor was he able to say whether the other occupant, Mary Shore, was present on either or both of these evenings. On no occasion over the entire period of surveillance was any physical intimacy observed other than "holding hands once or twice."

The evidence bearing upon appellee's visits on November 4th and December 28th, 30th and 31st, is less convincing than that incident to his visits on the other three evenings. On thirteen or more other times the detectives kept watch upon appellee, but no evidence of any moment was obtained.

Appellee, while freely admitting that he called upon Mrs. Cook, did not undertake to explain any of the circumstances testified to by the detectives; nor did he call as witnesses either of the occupants of the apartment. He relies upon the assumption that the evidence is insufficient to prove adultery.

The difficulty presented is in the evaluation of the facts and circumstances proved. Is guilt the only just and reasonable inference deducible therefrom? The test by which it is to be determined is set forth in 2 Bishop on Marriage, Divorce and Separation, sections 1356 and 1360:

"The rule for the sufficiency of the proven facts to infer adultery is that, if they are not reasonably reconcilable with the assumption of innocence yet are so with that of guilt, the conclusion of guilt will be authorized. But it will not be if either they can be reasonably reconciled with innocence, or cannot with guilt. Circumstances merely suspicious are inadequate, though there are degrees of imprudence from which the offense will be presumed. Still care and circumspection should attend all dealings with this class of evidence."

Of like import is the text of Nelson on Divorce and Annulment, Vol. 1, 2nd Ed., sec. 5.10, p. 183:

"A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of

the party charged. The general and widely recognized presumption of innocence must be indulged against it, and, while it is not required to be proved beyond a reasonable doubt, as in a criminal proceeding, the evidence must be at least clear and positive and convincing. Raising a considerable or even strong suspicion of guilt is not enough. The test most frequently reiterated (though by no means a satisfactory yardstick) is that the proof must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt. It traces back to the English case of *Lovedon* v. *Lovedon*, in which Lord Stowell said: 'The only general rule that can be laid down upon the subject is that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion * * * . For it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations; neither is it to be a matter of artificial reasoning, judging upon such things differently from what would strike the careful and cautious consideration of a discreet man.' "

See also 17 Am. Jur., sec. 397, p. 344.

Though the testimony bearing upon the conduct of appellee on the nights of November 5th, 6th, and December 26th, when read in connection with all other evidence in the record which tends to establish an adulterous disposition on his part, creates suspicion as to his guilt on those specific dates, yet we cannot say that it measures up to full and satisfactory proof.

The behavior of appellee and Mrs. Cook was far from that of circumspection. It creates grave suspicion as to the intimacy of their relation. Yet when measured by the rules of human conduct and experience as of this day and time, it is not inconsistent with freedom from actual guilt.

The facts in each case are necessarily dissimilar in detail. In *Holt* v. *Holt*, 174 Va. 120, 5 S. E. (2d) 504, upon circumstances equally if not more serious and con-

vincing of misconduct, it was determined that the charge of adultery was not proved. The late Mr. Justice Browning there made observations upon the weight of circumstantial evidence when measured by the standards of human conduct of today which are most enlightening and applicable to the facts here disclosed:

" * * * All that the evidence shows she has done, is consistent with her innocence—not innocence of suspicion, nor of imprudence, nor of questionable conduct—but innocence of adultery. * * *

"In the social complex men and women, and their acts, short of downright culpability, must be measured by the rules which govern human conduct and which are known to common observation and experience as of today. Nothing in life is static. What one generation condemns, a succeeding one countenances. Habits, customs, conditions, values, proportions, people change. Only a few elements are 'the same, yesterday, today and forever.' A great thinker said that the most pathetic being is a changeless person in a changing world. The thought and the conviction is that, however reprehensible the conduct of the persons here concerned would have been held to be a quarter of a century ago, today it is accounted perfectly consistent with purity of character and innocence of criminality. Who can say else than that the present order is an advance step toward a larger measure of truth and justice."

█ If this evidence be given all the weight to which it is entitled, and all reasonable inferences deducible therefrom be accorded appellant, yet to the guarded discretion and judgment of a reasonable man, it falls short of proof of adultery. It fails to point with reasonable certainty to a conclusion of guilt and leaves one groping in the realm of surmise, conjecture and speculation.

This brings us to a consideration of appellant's claim that appellee was guilty of cruelty and desertion prior to her adultery of September 20, 1946, and that such misconduct on his part constitutes recrimination and prevents

him from being entitled to an absolute divorce. The testimony bearing upon these charges is conflicting. Upon all of the evidence, the trial court concluded that they had not been proved and the decree so recites.

Though no mention is made in the pleadings of previous litigation between the parties, this cause is a sequel to *Haskins* v. *Haskins,* 185 Va. 1001, 41 S. E. (2d) 25. There the present appellee in general, vague, and insufficient terms, and by way of conclusions of law, undertook to charge his wife with mental and physical cruelty and constructive desertion. He there stated that because of that alleged misconduct she "caused complainant to leave the respondent." Her demurrer to his bill of complaint was sustained. That entire record was introduced in evidence by appellant in the cause now before us. By reliance thereon and upon the decision of this court which finally sustained the dismissal of the bill of complaint filed against her, she now seeks to invoke the doctrine of *res judicata* and so establish by record her husband's desertion.

We do not so construe the effect of that decision. It precludes the present appellee from again relying upon the same grounds of divorce there sought to be asserted. *Griffin* v. *Griffin,* 183 Va. 443, 32 S. E. (2d) 700. But in our opinion, it does not establish his desertion or relieve her of the obligation of proving her case.

That there was conduct to be condemned on the part of both parties prior to their separation on November 1, 1945, cannot be denied. The trial court may well have concluded that each had rendered married life unendurable to the other and so concluded that appellant's affirmative charges of cruelty and desertion against her husband had not been sustained. But from our view of the present record, a determination of which litigant, in contemplation of law, caused the separation is not controlling of the outcome of this case.

If it be established that one spouse has been guilty of cruelty, or of desertion for a period insufficient to

justify an absolute divorce, we do not deem those offenses, for which merely a divorce *a mensa et thoro* may be granted, grave though they may be, sufficient to bar the right of the other spouse to a divorce from the bonds of matrimony if the statutory grounds for that relief be sufficiently proved.

There is much authority to the effect that any grounds for a divorce from bed and board or from the bonds of matrimony may be successfuly pleaded in recrimination against a charge otherwise justifying an absolute divorce. 2 Bishop on Marriage, Divorce and Separation, secs. 340, 365 and 370; Keezer, Marriage and Divorce, 3rd Ed., sec. 522, p. 563; Nelson, Divorce and Annulment, 2nd Ed., Chap. 10 and sections therein, and 17 Am. Jur., "Divorce and Separation", sec. 233, p. 267.

In *Kirn* v. *Kirn* (1924), 138 Va. 132, 120 S. E. 850, which is relied upon by appellant, this court adopted the view that a ground for divorce either *a mensa et thoro* or *a vinculo matrimonii* was sufficient, in recrimination, to bar a suit based upon adultery.

Since that decision, the General Assembly of Virginia has provided that a ground of divorce *a mensa et thoro*, when actually reduced to a judicial decree, cannot be relied upon as a bar to any ground otherwise justifying a divorce from the bonds of matrimony. Acts 1934, p. 504. That enactment is now carried as sec. 5112a of the Code of Virginia, 1942 (Michie).

Its effect is to announce the public policy of this State to be that even though one spouse be armed with a decree of divorce from bed and board, it cannot be successfully pleaded as a defense by way of recrimination to defeat any charge brought by the other spouse for a divorce upon grounds justifying a decree of divorce *a vinculo matrimonii*. It is as follows: .

"The granting of a divorce from bed and board shall not be a bar to either party obtaining a divorce from the bonds. of matrimony on any ground which would justify a divorce from the bonds of matrimony if no divorce from

bed and board has been granted, unless the cause for absolute divorce was existing and known to the party applying for the divorce from the bonds of matrimony before the decree of divorce from bed and board was entered."

If a ground for divorce from bed and board, sufficiently proved in a court of competent jurisdiction, is insufficient upon which to successfully base the defense of recrimination, we believe that this court should now adhere to that announced public policy and conclude that any ground merely justifying a divorce from bed and board does not constitute a defense by way of recrimination to a suit based upon a ground made by statute sufficient to justify an absolute divorce. To hold otherwise would place one who had secured such a decree in a position less favorable than if it had not been obtained. The result would be unjust and so unreasonable as to amount to an absurdity.

We are, therefore, of opinion that the public policy of this State, so announced by legislative enactment, renders it proper that the decision in the case of *Kirn* v. *Kirn, supra,* be overruled to the extent hereinabove set forth.

We are of opinion that appellant's counsel is entitled to a reasonable fee for services in this court. That is sought in the petition before us and the sum of $150 will be allowed.

The decree of the trial court awarding a divorce *a vinculo matrimonii* to appellee and dismissing appellant's cross-bill is affirmed.

*Affirmed.*