## CIRCUIT COURT OF FREDERICK COUNTY

Eaton

    v.

Eaton

May 18, 1984

Case No. (Chancery) C-84-28

By JUDGE ROBERT K. WOLTZ

This opinion based on *ore tenus* hearing 9 May 1984 resolves the respective claims of the parties for divorce, the complainant suing on the ground of adultery and the defendant cross-claiming on the ground of "reasonable apprehension of mental and bodily hurt." Temporary spousal and child support were previously determined and matters of equitable distribution and permanent support are deferred for the present.

The standard of proof in Virginia for divorce on the ground of adultery as set forth in *Dooley v. Dooley*, 222 Va. 240 (1981), is quite high. There, in reversing a trial court finding of adultery, the opinion at page 246 quotes *Haskins v. Haskins*, 188 Va. 525 (1948), as to the standard:

> A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of the party charged. The general and widely recognized presumption of innocence must be indulged against it, and, while it is not required to be proved beyond a reasonable doubt, as in a criminal

proceeding, the evidence must be *at least clear and positive and convincing.* Raising a considerable or even strong suspicion of guilt is not enough. (Emphasis added.)

Citing *Colbert v. Colbert*, 162 Va. 393 (1934), *Dooley* buttresses this requirement by stating that, "The proof should be strict, satisfactory and conclusive."

In this case I find the complainant's proof meets this rigorous standard for showing adultery for the following reasons.

Admittedly the evidence, as in most cases of this type, was circumstantial. The principal testimony comes from a private detective in the employ of the complainant. He testified that the had the defendant and the alleged paramour under surveillance and had seen them on several occasions dining together in the evenings at a local restaurant. On one occasion he observed them leave the restaurant together after 2:00 a.m. indulging in numerous embraces and kisses before they departed in their respective vehicles. Subsequently, on two evenings separated by a day he followed them in their separate vehicles to the residence of the paramour, saw them enter the residence, described the changes in lighting within it, remained all night and saw no one exit the residence until daylight hours. Then he saw the female co-tenant of the alleged paramour leave, presumably for work, followed in about twenty minutes by the defendant, who started up the co-respondent's car for her, then saw her emerge to embrace and kiss and both depart in their respective vehicles.

There is corroboration for this testimony. The detective's assistant corroborated many of the details he testified to but because of the necessity to leave for her job as a school teacher did not observe the three individuals mentioned coming out of the residence. In addition, the detective identified photographs taken by him of the activities of the defendant and co-respondent leaving the residence on one of the mornings, including photographs of their affectionate embraces. These photographs are graphic evidence which, under the circumstances, could not be easily falsified and though taken by the detective himself are corroborative of his verbal account.

In addition, the defendant on cross-examination consistently invoked his privilege against self-incrimination in response to any questions attempting to link him to the co-respondent. The essence of the privilege against self-incrimination is to afford a witness with protection from forced testimony out of his own mouth which could be the basis of his own criminal prosecution or conviction. In a free society this right is a necessary shield to the individual as a witness in civil as well as criminal proceedings, protective against the criminal consequences of his forced testimony. The privilege is rooted and has grown in the milieu of criminal as opposed to civil consequences. To allow inferences adverse to him to be drawn from the use of the right by a defendant in a criminal prosecution would virtually nullify its purpose and effectiveness.

In civil proceedings a party witness has the same right, and for the same purpose: protection against the criminal consequences of his testimony. The history and design of the privilege do not relate or extend to purely civil consequences. When a party witness in a civil proceeding uses the privilege to protect himself from the criminal consequences of his testimony, the shield has served its ultimate purpose. In furthering this purpose the party as a consequence may prevent the admission of highly relevant and material evidence, but by doing so he cannot extend the shield to gain protection against additional civil consequences, in particular the drawing of inferences from his failure to testify. *See* McCormick *Law of Evidence*, 1954 ed., § 80 at 163; *Self-Incrimination in Civil Litigation*, 52 Va. L. Rev. 322; 4 A.L.R.3d 545; *see also Ikeda v. Curtis*, 261 P. 684 (Wash. 1953).

Under the circumstances of the case an inference adverse to him is drawn from the defendant's refusal to testify whether he had any knowledge or association with the alleged paramour. In light of the detective's testimony corroborated by his assistant and the photographs introduced, certain other evidence introduced by the complainant and the inference drawn from the defendant's refusal to testify concerning any adulterous relationship on his part, I find that the adultery has been sufficiently proven as measured by the standard set forth in *Dooley*.

204

The alleged paramour was also called as a witness by the complainant and she likewise invoked her right against self-incrimination in declining to answer any questions linking her to the defendant. Regardless of any practical control a party may have over a witness, a party has no legal control over a witness's assertion of the privilege against self-incrimination. As a result, assertion of the right by a non-party witness gives rise to the slightest, if any at all, inference against a party. Sufficiency of the evidence to prove adultery is found without necessity to consider the privilege assertion by the co-respondent.

The defendant's cross-bill for divorce is denied. Code § 20-95 provides in part, "A divorce from bed and board may be decreed for . . . reasonable apprehension of bodily hurt . . ." There is not a scintilla of evidence that the defendant suffered any apprehension of bodily hurt at the hands of the complainant. Second, there is no ground for divorce in Virginia based on reasonable apprehension of "mental hurt."