COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton


ANTONIA MARIA R. ROMERO, A/K/A
 ANTONIA COLBOW
                                        OPINION BY
v.        Record No. 0686-97-1     JUDGE JOSEPH E. BAKER
                                         APRIL 7, 1998
GEORGE ALLEN COLBOW


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    V. Thomas Forehand, Jr., Judge

            (Barton N. Daniel, on brief), for appellant.
             Appellant submitting on brief.

            (Mark S. Smith; Christie & Kantor, on brief),
             for appellee.  Appellee submitting on brief.


        Antonia Maria R. Romero (wife), also known as Antonia

Colbow, appeals from a decree of divorce entered by the Circuit

Court of the City of Chesapeake (trial court) that awarded George

Allen Colbow (husband) a divorce from wife on the ground of

adultery, denied spousal support to wife while reserving that

right only to husband, and made equitable distribution awards.

For the reasons that follow, we reverse.

        The evidence and issues in this case were presented in

person by the parties before a commissioner in chancery.  Wife

contends the evidence was insufficient to prove she committed

adultery and, therefore, the trial court erroneously refused to

reserve her right to spousal support.  Wife further asserts that

the trial court erroneously reduced her marital share to

husband's military pension based upon the unfounded allegation of

adultery.

Husband and wife married in 1974 in Spain while husband was in the U.S. Navy. They separated in December 1992. On January 11, 1993, husband filed for divorce, alleging wife had committed adultery.

Only the commissioner heard the testimony of the parties and their witnesses. Husband testified that when he returned from the Gulf War in 1992, he and wife moved into separate bedrooms. He believed wife was having an affair. One evening during the fall of 1992, he went to look for wife at about 1:00 a.m. because she had not returned from her job at a local department store. He located wife's car and while waiting nearby, he saw wife and a man named Andre Ramirez drive into the parking lot in Ramirez' car, stop, and begin to kiss. When husband drove up to Ramirez' vehicle, wife and Ramirez looked at husband, left the parking lot at a high rate of speed, and managed to evade him. When husband returned home, wife was already there. Wife admitted having been with Ramirez that night but claimed he was "a friend" and denied kissing him.

Husband further testified that by the fall of 1992, he realized wife was no longer storing the parties' telephone bills in their usual place. He obtained from the telephone company replacement records which showed numerous calls between wife's and Ramirez' residences from December 1991 to February 1993. He also presented polaroid photographs he found in wife's car after the separation, one of which showed wife in Ramirez' place of

business wearing a blouse and short, lace-trimmed skirt or slip. That photograph was admitted as exhibit one. Another picture showed wife in Ramirez' residence, dressed only in a sweater, and she appeared to be removing or putting on underclothes. Husband testified that he had not taken the photos and was not present when they were taken.

Ramirez confirmed that the photos depicted his office and his home, but he denied taking them or knowing who did. He admitted that he and wife were friends and that he had spent some time with her daughter, as well, but he denied having sexual relations with wife.

Wife admitted that she used Ramirez' credit cards in 1992, signed his name, and picked up his laundry. When asked to identify the individual in the picture designated as exhibit one, wife asserted her Fifth Amendment privilege against self-incrimination. She testified that she had not had sexual relations with anyone other than husband from before the parties' separation until the time of the commissioner's hearing on December 27, 1994; however, she then recanted her denial and again invoked the Fifth Amendment.

In his report filed June 2, 1995, the commissioner found that wife was not a credible witness and that the circumstances were suspicious, but he concluded that husband had not met his burden of proving adultery by clear and convincing evidence. He recommended a no-fault divorce with a reservation of spousal

support to wife and an award to wife of fifty percent of the marital share of husband's non-disability military retirement pay. The commissioner based this award on a finding that

> when one spouse is in the service of their country, it places an added burden on the other spouse to perform more parenting obligations, and obligations tending to household responsibilities. Also, evidence in this case is that wife worked throughout the marriage, although she never worked very long or full-time in a place, and has no other retirement available.

Husband excepted to the commissioner's report.

The trial court reviewed the transcript and exhibits from the commissioner's hearing, the memoranda filed by the parties, and heard argument of counsel. By letter opinion of October 29, 1996, the trial court ruled that the photographs, evidence of the car chase, and the inconsistency of wife's testimony proved wife's adultery by clear and convincing evidence. Based on the finding of adultery, the court refused to reserve wife's right to spousal support and stated that in consideration of "all the evidence," wife should receive thirty-three-and-one-third percent of the marital share of husband's military retirement. It did not expressly link the reduction to the proof of wife's adultery. The trial court also expressly noted that, in addition to all the evidence and argument and the report of the commissioner, it had considered the statutory factors in Code §§ 20-107.1, -107.2, and -107.3.

On February 19, 1997, the trial court entered a final decree

- 4 -

which, contrary to the commissioner's report and findings, (1) found wife had committed adultery, (2) refused to reserve her right to spousal support as a result, and (3) reduced her marital share of husband's military pension to thirty-three-and-one-third percent without explanation.

When the trial court hears the testimony of witnesses ore tenus, its findings of fact are reviewed on appeal in the light most favorable to the party who prevailed below.  See, e.g., Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988).  However, when the chancellor has referred the matter to a commissioner in chancery, "'[e]ven where the commissioner's findings of fact have been disapproved [by the chancellor], an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.'"  See Robinson v. Robinson, 5 Va. App. 222, 226, 361 S.E.2d 356, 358 (1987) (quoting Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984)).  Where the circuit court has rejected the commissioner's conclusion that the evidence was insufficient to prove a party's infidelity, "we must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusion of the trial court."  Dooley v. Dooley, 222 Va. 240, 245, 278 S.E.2d 865, 868 (1981) (citation omitted); cf. Higgins v. Higgins, 205 Va. 324, 328-29, 136 S.E.2d 793, 796 (1964) (discussing duties of and deference to

commissioner).

The commissioner described wife's testimony before him as confusing at best when she invoked her Fifth Amendment rights while simultaneously denying having had sexual relations with anyone but husband. On the allegation of adultery, the commissioner said that, although wife was not a credible witness, the fact that she had exercised her Fifth Amendment rights could not be used against her. See Code § 8.01-223.1. Therefore, the evidence "as a whole" justifiably raised suspicion; but it did not equate to clear and convincing evidence of adultery.

In its letter opinion, the trial court recognized "the principle that the Commissioner's findings of facts should be sustained unless it is determined that such findings are not supported by the evidence." However, after reviewing the evidence, the trial court found that the commissioner "erred when he did not find [wife] guilty of adultery despite clear and convincing evidence." In its opinion, the trial court said that it "based its decision on the photographs found by [husband] in [wife's] car, the evidence of the car chase, and [wife's] display of inconsistency at the Commissioner's hearing."

"To establish a charge of adultery the evidence must be clear, positive and convincing. Strongly suspicious circumstances are inadequate. Care and circumspection should accompany consideration of the evidence." Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975). Here, as in Painter,

wife's conduct created strong suspicion of an intimate relationship with a person not her husband; but even strongly suspicious circumstances are not enough to establish adultery. Id.

> "A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of the party charged. The general and widely recognized presumption of innocence must be indulged against it, and, while it is not required to be proved beyond a reasonable doubt, as in a criminal proceeding, the evidence must be at least clear and positive and convincing. Raising a considerable or even strong suspicion of guilt is not enough."

Haskins v. Haskins, 188 Va. 525, 530-31, 50 S.E.2d 437, 439 (1948) (citation omitted).

This Court must decide whether, on this record, the finding of the commissioner or the trial court is supported by the evidence. We hold that "the photographs found by [husband] in [wife's] car, the evidence of the car chase, and [wife's] display of inconsistency at the Commissioner's hearing" are not "clear and positive and convincing" evidence, as required by Haskins and its progeny, to support the charge of adultery.

Accordingly, we reverse the trial court's finding that the commissioner erroneously concluded the evidence did not clearly and convincingly prove wife committed adultery. Because the trial court applied its finding of adultery in refusing to reserve the right of spousal support to wife and because it may have done so in determining how much of the marital share of

- 7 -

husband's pension to award wife, we also reverse those findings and remand this cause to the trial court for further consideration consistent with this opinion.

<u>Reversed and remanded.</u>