COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Lemons*
Argued at Richmond, Virginia


RUTH BOYD HUGHES
                                          OPINION BY
v.    Record No. 1259-99-2         JUDGE JAMES W. BENTON, JR.
                                          AUGUST 1, 2000
RICHARD LEE HUGHES


        FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                  Timothy J. Hauler, Judge

        T. Lee Brown, Jr. (Parker, Pollard & Brown,
        P.C., on brief), for appellant.

        Denis C. Englisby (Englisby & Englisby, on
        brief), for appellee.


        The trial judge granted Richard Lee Hughes a divorce based

on a finding that his wife, Ruth Boyd Hughes, had committed

adultery.  The wife contends the evidence does not support the

finding and that the judge erred by not granting a divorce on

the ground of a continuous one year separation.  She also

contends the trial judge erred in considering as evidence in the

divorce case his impressions of evidence given in the separate

custody proceeding.  We reverse the trial judge's decree and

remand for further proceedings upon the allegation that the

parties have continuously lived apart for one year.

_____

        * Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

I.

The wife filed a bill of complaint for divorce on the ground that she and the husband had lived separate and apart for one year. The bill of complaint noted that the juvenile court was "currently exercising jurisdiction over the issues of child support, custody and visitation" and made no claim for relief for those issues. By a cross-bill, the husband alleged desertion and adultery. The wife denied the allegations and answered that she fled from the marital residence to escape severe mental and physical abuse, which ultimately required her to obtain a protective order against the husband.

At trial, the evidence was presented by deposition only. In her deposition, the wife testified that upon leaving the marital residence, she and her children lived with her family for about a month until they had to move because it had "gotten a little crowded." After that, she stayed at the YWCA Shelter for abused women for a week while waiting for an opening at another shelter-type facility, St. Joseph's Villa. While she was in the YWCA Shelter, her children stayed with her friend and co-worker, Michael Kopeski, because her parents could not take the children. After a week, the wife and the children moved to St. Joseph's Villa and remained there approximately five months. The wife and the children then moved into Kopeski's residence. The wife testified that she went to Kopeski's residence because she had "nowhere to live." The wife testified that she earns

$6.20 per hour, that she has a "hard time making it," and that her mother "doesn't have the room or the finances" to allow the wife and the children to reside with her.

The wife and Kopeski testified in their depositions that they maintain separate bedrooms in Kopeski's residence. Although they both acknowledged that they are in love with one another, both also testified that they are not having sexual intercourse. Kopeski testified that "[i]f it's the Lord's blessing," he would like to marry the wife after her divorce.

In pertinent part, the trial judge ruled as follows:

> In reviewing the argument of counsel and the authorities cited in support of the respective position of the parties, the Court is of the opinion that adultery has been proven by clear, positive and convincing proof. In reaching this conclusion, the Court has considered not only the depositions submitted into evidence on this issue, but in addition, the demeanor of the [wife] during the course of an ore tenus hearing conducted on September 19, 1997, [in the custody proceeding,] wherein this Court awarded custody of the parties' children, . . . to the [husband].
>
> [The wife] has cohabited with . . . Kopeski, . . . in an open and notorious fashion for a considerable period of time which predates the commencement of the instant litigation. The Court, during the ore tenus hearing conducted in [the custody proceeding] on September 19, 1997, found the testimony of the [wife] on this issue to be inherently incredible. Furthermore, the testimony of the [wife], as reflected in her deposition . . . serves only to strengthen the belief of this Court of the ongoing nature of the adultery that has occurred in this case.

Following the entry of the divorce decree, the wife appealed.

## II.

If the evidence proves that "multiple grounds for divorce exist, the trial judge can use . . . sound discretion to select the grounds upon which . . . to grant the divorce." Lassen v. Lassen, 8 Va. App. 502, 505, 383 S.E.2d 471, 473 (1989). "A trial [judge's] determination of matters [that lie] within [the trial judge's] discretion is reversible on appeal only for an abuse of that discretion." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). Furthermore, a trial judge's factual finding will "not be set aside unless plainly wrong or without evidence to support it." Id.

"One who alleges adultery has the burden of proving it by clear and convincing evidence." Seemann v. Seemann, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987) (citation omitted). In clarifying that burden, the Supreme Court has held that "[s]trongly suspicious circumstances are inadequate" and that "[c]are and circumspection should accompany consideration of the evidence." Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975) (citation omitted). This high standard of proof serves a salutary purpose.

> "A charge of adultery is one of a criminal
> offense and especially and uniquely damaging
> to the reputation of the party charged. The
> general and widely recognized presumption of
> innocence must be indulged against it, and,

> while it is not required to be proved beyond
> a reasonable doubt, as in a criminal
> proceeding, the evidence must be at least
> clear and positive and convincing.  Raising
> a considerable or even strong suspicion of
> guilt is not enough.  The test most
> frequently reiterated (though by no means a
> satisfactory yardstick) is that the proof
> must be such as to lead the guarded
> discretion of a reasonable and just man to
> the conclusion of guilt."

Haskins v. Haskins, 188 Va. 525, 530-31, 50 S.E.2d 437, 439 (1948) (citation omitted).

The wife contends she moved into Kopeski's residence because of a lack of financial resources and that the husband presented no evidence to corroborate his allegation that the wife and Kopeski are engaged in a sexual relationship.  She argues that the finding of adultery was based on speculation.

The husband argues that although the wife and Kopeski both deny having sexual intercourse, the following facts proved by clear and convincing evidence that the wife has committed adultery:  the wife and Kopeski have lived in the same house and not dated anyone else; they have told one another, "I love you"; they share meals and household chores; they occasionally go for walks or to the movies; Kopeski testified that he is sexually attracted to the wife; and the wife's mother testified that the wife lives in Kopeski's home.

Although the trial judge found that the husband proved by clear and convincing evidence that the wife committed adultery, we agree with the wife's contention that the evidence did not

clearly and convincingly support that finding.  The evidence undisputedly proved that when the wife was forced to leave the marital residence, she and the children initially moved in with her family.  Her parents' financial and medical circumstances caused her to leave and to enter a shelter.  After she arranged to move to another shelter, she moved there with her children.  Only after being in that shelter for five months did she move into Kopeski's home.

The wife testified that she continued to live in Kopeski's home because she has "nowhere to live."  She testified that she and the children have their own bedroom in the house.  In light of her difficult financial circumstances, the wife clearly had few options.  Obviously, a shelter is not the ideal place for the wife, much less her children, to live.  Moreover, the husband presented no evidence that proved the wife moved into Kopeski's residence for any reason other than her desperate financial situation.

When asked if she could live with her mother, the wife explained that she could not, because "[her mother] doesn't have the room or the finances."  She testified that both she and her mother have a "hard time making it" financially.  The wife also testified that her mother's residence is "seventy-five miles" from the wife's place of employment.  The wife earns only $6.20 an hour and does not have health insurance.  Kopeski does not ask her to pay rent and only asks that she buy the groceries and

assist with the phone bill.  She testified that the rest of her money goes to various expenses, such as "[h]ospital bills, medical bills."

The wife and Kopeski consistently testified that they have not had sexual intercourse.  The husband presented no evidence that proved otherwise.  Neither the trial judge nor we can hold as a matter of law that two people cannot live in the same residence without engaging in sexual intercourse until marriage. The evidence in this record "is not inconsistent with freedom from actual guilt [of adultery]."  Haskins, 188 Va. at 531, 50 S.E.2d at 440.  Indeed, in reversing a trial judge's finding of adultery in Dooley v. Dooley, 222 Va. 240, 278 S.E.2d 865 (1981), the Supreme Court ruled as follows:

> While we agree that the behavior of the wife in the case at hand, when read in connection with all other evidence in the record, creates suspicion as to her guilt on the specific dates in issue, we do not believe the evidence amounts to clear, positive and convincing proof.  "It creates grave suspicion as to the intimacy. . . .  Yet when measured by the rules of human conduct and experience as of this day and time, it is not inconsistent with freedom from actual guilt."

Id. at 246, 278 S.E.2d at 868-69 (citation omitted); see also Cutlip v. Cutlip, 8 Va. App. 618, 619-21, 383 S.E.2d 273, 274-75 (1989).

In several cases involving far more evidence of suspicious circumstances than in this case, the Supreme Court and this

Court have held that the evidence was insufficient to prove adultery. In Painter, the wife discovered white stains on the husband's pants and underwear and found another woman's lipstick on the husband's shirts. See 215 Va. at 420, 211 S.E.2d at 38. She also discovered a note to him saying, "I need you so." After she saw her husband in a car with another woman and remonstrated with her, she hired private investigators, who observed the husband "kissing and embracing [the woman] in her automobile." The investigator saw the husband and the woman drive separately to another city, meet in that city, enter the woman's car, and drive away. They returned several hours later and kissed in her automobile. On another occasion, the investigator saw the husband's truck in front of the woman's home at 11:55 p.m., with only a dim light in the living room. A light in the bathroom twice was turned on and off. The investigator saw the husband leave at 1:45 a.m. See 215 Va. at 419, 211 S.E.2d at 38. Although the Supreme Court noted that the circumstances created "grave suspicion of an intimate relationship," the Court held that "even strongly suspicious circumstances are not enough to establish adultery." Id. at 420, 211 S.E.2d at 38.

Similarly, in Seemann, although the evidence proved "highly suspicious circumstances," the Supreme Court held that it failed to prove adultery. 233 Va. at 294, 355 S.E.2d at 886-87.

> [The wife] testified that she had "strong
> feelings" for [the other man] but denied
> that they ever engaged in sexual
> intercourse.  While admitting that she and
> [the other man] had slept in the same
> bedroom, she said that they never slept in
> the same bed.  When she was asked why she
> had not had sexual intercourse with [the
> other man], [the wife] replied:  "Because I
> don't believe in it.  It's not God's way.
> God says no to it."  When counsel suggested
> that her denial was "rather incredulous,"
> [the wife] responded:  "I understand that, I
> do.  But that's why our relationship is so
> special.  I realize it's extremely hard to
> believe in this day and time, but there are
> people out there that have principles today;
> Godly principles."
>
> [The other man] expressed his love for [the
> wife], but he also denied that they had
> engaged in sexual intercourse.  When he was
> asked why they had not had sexual
> intercourse, [the other man] answered:
> "Because we just don't believe that that's
> the way it should be.  That's why she's so
> special.  That's why I spend the time I do
> with her."  In a similar vein, he added:
> "She's that way.  She has those beliefs, and
> that's what I find so special about her."

Id. at 292-93, 355 S.E.2d at 885-86.  Holding the evidence

failed to prove adultery, the Supreme Court ruled that this

testimony was not "incredible as a matter of law."  Id. at 294,

355 S.E.2d at 887.

In Romero v. Colbow, 27 Va. App. 88, 497 S.E.2d 516 (1998),

the evidence also proved suspicious circumstances.  After the

husband returned from extended military duty, he and the wife

moved into separate bedrooms.  At 1:00 a.m. one morning, the

husband saw the wife and another man kissing in a parking lot.

When the wife saw the husband, she quickly drove away. See 27 Va. App. at 90, 497 S.E.2d at 517. The wife hid telephone bills showing calls made to the other man's residence. The wife also used the other man's credit card. The husband found photographs of the wife scantily dressed and posed in the other man's residence and in his place of business. Although the other man and the wife denied having sexual relations, the wife recanted her denial and invoked the Fifth Amendment privilege against self-incrimination. See id. at 90-91, 497 S.E.2d at 517-18. We held that this evidence "created strong suspicion of an intimate relationship," id. at 93, 497 S.E.2d at 519, but it was not "'clear and positive and convincing' evidence, as required by Haskins and its progeny, to support the charge of adultery." Romero, 27 Va. App. at 94, 497 S.E.2d at 519.

Thus, in determining whether clear and convincing evidence supports a finding of adultery, the Supreme Court and this Court have consistently reviewed the record to determine not only whether the evidence merely established suspicious conduct, but also whether a credible explanation existed for the circumstances. The husband relies on several cases in which the Courts have found clear and convincing evidence of adultery. This case, however, is entirely dissimilar from the adultery cases upon which the husband relies. Those cases involved covert meetings with individuals to whom the spouse was not married, the evidence provided no reasonable explanation for the

spouse's conduct, and the record contained ample corroborating evidence of adultery. In Coe v. Coe, 225 Va. 616, 303 S.E.2d 923 (1983), for example, the trial judge found adultery was established based on a private detective's testimony that on two occasions in the middle of the night, he had observed the wife's car outside the unlit apartment of another man and then saw her leave early in the morning. See id. at 621-22, 303 S.E.2d at 926-27. In affirming the trial judge's finding, the Supreme Court noted that the wife did not contradict or deny the detective's evidence, no other witness contradicted or denied that evidence, and the wife made "no attempt to explain her relationship with [the man], or her presence in his unlighted apartment on the two occasions testified to by the detective." Id. at 622, 303 S.E.2d at 927.

Similarly, in Higgins v. Higgins, 205 Va. 324, 136 S.E.2d 793 (1964), the evidence proved that men visited the wife's home late at night, where she was seen kissing various men and "generally acting indiscreetly." Id. at 327, 136 S.E.2d at 795. Accompanying police when they raided a motel, the husband found his wife "and a man . . . occupying [a motel] room, both scantily clothed in underwear." Id. They had consumed alcohol in a room that "was in a used and rumpled condition." Id. The Court noted that "[t]he record is replete with evidence that in the husband's absence [the wife] kept company with men and at various times was seen in compromising positions with them; that

she consumed alcoholic beverages to an excess." Id. at 328, 136 S.E.2d at 796.

Noting the lack of any plausible explanation, the Court in Higgins observed that the wife "attempted to explain that she and [the man] had gone to the motel room for the purpose of discussing some real estate business; that while there she had decided to wash her hair after noticing that the motel had soft water, and that this accounted for her unclad condition." Id. at 327, 136 S.E.2d at 795. In attempting to explain why she spent another night in a motel room with the same man, "she [said she] was lonely and had gone to the room for the purpose of 'crying on his shoulder.'" Id. at 327-28, 136 S.E.2d at 795-96. Given these circumstances of covert conduct and the lack of a plausible explanation, the Court concluded "from the cold print of the record, that [the wife] has been guilty of infidelity." Id. at 328, 136 S.E.2d at 796. See also Derby v. Derby, 8 Va. App. 19, 24, 378 S.E.2d 74, 76 (1989) (holding that the evidence proving adultery "was not refuted nor was it inherently incredible").

Pertinent to this case, we noted in Gamer v. Gamer, 16 Va. App. 335, 429 S.E.2d 618 (1993), that a significant consideration that detracts from proof of adultery is a lack of "evidence that the relationship or living arrangement between [the spouse] and the [person with whom that spouse is allegedly engaging in adultery] was for economic benefit or personal

convenience or was other than amorous."  Id. at 340, 429 S.E.2d

at 633.  In Gamer, a trial judge granted a divorce on the ground

of one year's separation and found no adultery.  See id. at 339,

429 S.E.2d at 622.  We criticized that finding because the

evidence contained no explanation of the conduct.  There, the

wife discovered the husband clad only in a robe and another

woman upstairs hiding in a closet of the master bedroom.  In the

master bedroom, "the bed sheets were pulled haphazardly over the

bed and [the husband's] silk shorts were lying on the floor."

Id. at 338, 378 S.E.2d at 621.  In addition, a detective

testified that later the husband and the other woman stayed

overnight at the Gamer home on several occasions.  The evidence

proved that on that occasion the woman's clothing, shoes, and

other personal belongings were in the master bedroom.  See id.

Focusing on the lack of credible evidence to explain why

the woman would be staying with the husband if not because she

was having an adulterous affair, we said the following:

> Notwithstanding the weighty burden of proof
> to establish adultery and the deferential
> standard of appellate review, the
> commissioner's findings and recommendation
> disregarded the obvious.  There was no
> evidence that the relationship or living
> arrangement between [the husband] and the
> woman was for economic benefit or personal
> convenience or was other than amorous.
> Overwhelming evidence was introduced of [the
> husband's] extramarital affair, and the only
> evidence to the contrary was his less than
> credible bare denial.

Id. at 340, 429 S.E.2d at 622 (emphasis added).  In affirming that decision, we noted, however, that the absence of a finding of adultery had no economic impact in that case and, therefore, "the error was of no consequence."  Id. at 340, 429 S.E.2d at 622.

The evidence in this record amply proved that the wife moved into Kopeski's residence because of dire financial circumstances after having subjected herself and the children to living in a shelter for five months.  The wife has not tried to conceal the fact that she lives in the same house with Kopeski.  She has consistently denied that she and Kopeski are involved in a sexual relationship.  No evidence proved otherwise.

> All that the evidence shows she has done, is consistent with her innocence - not innocence of suspicion, nor of imprudence, nor of questionable conduct - but innocence of adultery.
>
> "In the social complex[,] men and women, and their acts, short of downright culpability, must be measured by the rules which govern human conduct and which are known to common observation and experience as of today.  Nothing in life is static.  What one generation condemns, a succeeding one countenances.  Habits, customs, conditions, values, proportions, people change.  Only a few elements are 'the same, yesterday, today and forever.'  A great thinker said that the most pathetic being is a changeless person in a changing world.  The thought and the conviction is that, however reprehensible the conduct of the persons here concerned would have been held to be a quarter of a century ago, today it is accounted perfectly consistent with purity of character and innocence of

criminality.  Who can say else than that the
present order is an advance step toward a
larger measure of truth and justice."

Haskins, 188 Va. at 532, 50 S.E.2d at 440 (citation omitted).

The evidence in this record "fails to point with reasonable
certainty to a conclusion of [adultery] and leaves one groping
in the realm of surmise, conjecture, and speculation."  Id. at
532, 50 S.E.2d at 440.  Thus, the only reasonable conclusion to
be drawn is that "the evidence is not inconsistent with the
[wife's] innocence" of adultery.  Cutlip, 8 Va. App. at 621, 383
S.E.2d at 275.  Giving proper deference to the trial judge's
findings of fact, we, nonetheless, review the sufficiency of
that evidence as a matter of law.  Upon our review, we hold
that, as a matter of law, the evidence is insufficient to
sustain the elevated burden of proof of adultery by clear and
convincing evidence.

III.

The wife contends the trial judge also erred in considering
his impression of her testimony in an ore tenus hearing, which
was held in the separate case concerning custody.  The record
establishes that the parties presented evidence only through
depositions in the divorce proceeding.  The trial judge's
opinion letter states that the judge weighed the wife's
credibility upon consideration of her testimony in the separate
custody proceeding.  The trial judge's consideration of ore
tenus testimony given in another proceeding was erroneous.

> "The general rule is that the court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, <u>even between the same parties and in the same court</u>, unless the proceedings are put in evidence. The reason for the rule is that the decision of a cause must depend upon the evidence introduced. If the courts should recognize judicially facts adjudicated in another case, it makes those facts, though unsupported by evidence in the case at hand, conclusive against the opposing party; while if they had been properly introduced they might have been met and overcome by him."

<u>Beanau v. Nealon</u>, 219 Va. 1039, 1043, 254 S.E.2d 82, 85 (1979) (emphasis added) (citation omitted); <u>see</u> <u>also</u> <u>Russell County School Board v. Anderson</u>, 238 Va. 372, 385, 384 S.E.2d 598, 605 (1989) (holding that "it was plain error for [the trial judge] to go outside the record to find another reason to support [his] decision").

## IV.

For the foregoing reasons, we reverse the trial judge's finding that the evidence proved clearly and convincingly that the wife committed adultery. Accordingly, we remand this cause to the trial judge for further proceedings upon the wife's allegations that the parties have continuously lived apart for one year.

<u>Reversed and remanded</u>.

Coleman, J., dissenting, in part, and concurring, in part.

I believe the evidence supports the trial judge's factual finding that Ruth Boyd Hughes committed adultery. In my opinion, the majority substitutes its judgment for that of the trial judge by making different factual findings and in giving greater weight to certain evidence than did the trial judge when deciding what inferences to draw from the evidence. In so doing, the majority disregards a fundamental tenet of appellate review -- that in reviewing a trial judge's decision based on factual findings, we will "not . . . set aside [the judgment] unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

Adultery must be proven by clear and convincing evidence. Viewing the evidence and the inferences that a fact finder may draw from that evidence, in my opinion, the evidence clearly and convincingly supports the trial judge's factual finding that Ruth Hughes committed adultery while cohabiting for more than a year and one-half with Michael Kopeski.

The evidence proved that Ruth Hughes and her two children moved in Michael Kopeski's home with him in December 1996 and they have lived together continuously from that date through the date of this appeal. Hughes and Kopeski acknowledged that they love one another and plan to marry. Kopeski acknowledged that he is sexually attracted to Ruth Hughes. Neither has dated

anyone else during the time they have lived together. They have taken trips together, including a trip for her to meet his parents. They share the household chores and responsibilities. The foregoing evidence is sufficient, in my opinion, to support the finding by the trial judge that Ruth Hughes and Michael Kopeski have cohabited together for years and have committed adultery.

Although the record contains evidence which would support the majority's contrary factual finding, such as the denial by Hughes and Kopeski that they committed adultery and the fact that Hughes initially had an economic reason for moving in with Kopeski, the trial judge, in the exercise of his exclusive authority, decided not to believe their denials or Hughes' assertion. Rather, the trial judge drew the reasonable and logical inference that two people who are in love and have cohabited together for years have engaged in sexual intercourse. We, as an appellate court, do not decide which version of facts we find more plausible. Furthermore, were we permitted to do so, I would reject the majority's reasoning that the evidence did not prove adultery simply because it proved that Hughes initially sought refuge with Kopeski as a battered wife and moved in with him for economic reasons. The majority explains that, in today's social environment, men and women, like Hughes and Kopeski, live together for various reasons, including economic convenience or necessity. Regardless of the factors

that may have initially brought Hughes and Kopeski together, they are now living together and are planning to marry, factors which support the trial judge's finding of adultery.

I also reject the majority's effort to distinguish the facts in this case as less compelling to prove adultery than the line of cases, which the majority cites, that hold adultery has been proven where one spouse is shown to have "covertly" met and spent time with a member of the opposite sex at an apartment, hotel or motel, or other location. I agree that in those cases the fact of the "covert" meetings and lack of a cogent explanation for the liaisons supported the trial judge's finding of adultery based upon the opportunity to engage in sexual intercourse. See Coe v. Coe, 225 Va. 616, 303 S.E.2d 923 (1983); Higgins v. Higgins, 205 Va. 324, 136 S.E.2d 793 (1964); Derby v. Derby, 8 Va. App. 19, 378 S.E.2d 74 (1989). But, the undisputed facts in this case establish that Hughes and Kopeski have cohabited together since 1996; they have a romantic relationship and plan to marry; and the relationship is exclusive. These facts are equally, if not more compelling, than the "covert" meeting cases in supporting a fact finder's conclusion that the two people who have openly cohabited together for several years and who plan to marry have committed adultery.

The majority also cites three cases in support of its holding in which, according to the majority, the Supreme Court

and this Court found the evidence insufficient to prove adultery on more compelling facts.  See Seemann v. Seemann, 233 Va. 290, 355 S.E.2d 884 (1987); Painter v. Painter, 215 Va. 418, 211 S.E.2d 37 (1975); Romero v. Colbow, 27 Va. App. 88, 497 S.E.2d 516 (1998).  None of those decisions, in my opinion, supports the action that the majority takes in this case.  In none of those cases did the Courts find the evidence insufficient, on appeal, to support a finding of adultery.  In fact, in Seemann and Painter the Supreme Court affirmed and expressly upheld the factual findings of the trial judge.  In Romero, we held that the trial judge was bound by the factual finding of the commissioner who had heard the witnesses and made credibility determinations, rather than the chancellor.  These cases support the well established standard of appellate review under which the appellate court is bound by the factual findings of the trial judge when supported by credible evidence, which is the case here.

For the foregoing reasons, I dissent from the holding of the majority with respect to that issue.  I would affirm the trial court.

Finally, as to the majority's holding that the trial judge erred by considering Hughes' testimony from the ore tenus hearing in the separate custody case, in my opinion, that error was harmless, see generally Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc), because

the two cases, although filed as separate proceedings, involved the same parties, the same judge, and essentially the same issues concerning the proof of adultery to support the grounds for divorce or changing custody. Admittedly, a different attorney represented Mrs. Hughes in the two proceedings, but essentially the same evidence was presented in both proceedings, even though one was by deposition and one ore tenus. In my opinion, the error does not justify reversing the judgment of the trial court.