COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Petty
Argued at Chesapeake, Virginia


WINSTON J. REID, III

MEMORANDUM OPINION[*] BY
v.        Record No. 2653-05-1        JUDGE WILLIAM G. PETTY
JULY 18, 2006

TARA G. REID


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Terry N. Grinnalds for appellant.

(Paul H. Wilson; Wilson & Wilson, P.C., on brief), for appellee.


Winston J. Reid, III ("father") appeals from the circuit court's October 21, 2005 final

custody and child support decree. On appeal, he argues that (1) the trial court erred by transferring

custody of the parties' minor child to Tara G. Reid ("mother") without first finding a material

change in circumstances; (2) the evidence does not support the court's decision to transfer custody

of the child; and (3) the trial court erred in its child support determination. For the reasons stated

below, we affirm the trial court's decision in part and reverse it in part.

I. Material Change in Circumstances

Father first contends that the trial court erred in transferring custody of the parties' minor

child to mother without first finding a material change of circumstances. Mother contends father

procedurally defaulted this argument pursuant to Rule 5A:18.

When the trial court stated its ruling transferring custody at the June 21, 2005 hearing,

father's counsel did not make a specific, contemporaneous objection as required by Rule 5A:18.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

It is well established that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice . . . ." Rule 5A:18. Furthermore, an endorsement of an order as "seen and objected to" is typically "not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error. Such an endorsement is sufficient to satisfy Rule 5A:18 only 'if the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection.'" Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 926 (2000) (quoting Mackie v. Hill, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993)) (internal citations omitted). While father did endorse the order in question as "Seen and objected to," he did not specifically object to the court's failure to make an explicit finding of a material change in circumstances.[1] Thus, this issue was not properly preserved for appeal.

At oral argument before this Court, father conceded that trial counsel did not formally object to the trial court's ruling regarding a material change in circumstances and requested that the Court consider the issue under the ends of justice exception to Rule 5A:18.

---

[1] In pertinent part, father's objection states:

> Defendant [father] objects to the transfer of physical custody of Alyssa Joy Reid to plaintiff [mother] as such transfer of custody was contrary to the law and evidence presented. The evidence as presented in accordance with § 20-124.3 of the Code of Virginia, 1950, as amended, clearly weighed in favor of defendant [father] retaining physical custody of the aforesaid child. Such transfer of custody was not in the best interest of the child. Plaintiff [mother] alleged that defendant [father] was involved in an adulterous relationship; however, she failed to prove the alleged relationship was negatively impacting the aforesaid child. Evidence presented by the defendant and unchallenged by plaintiff [mother] showed the child was thriving in the care of the defendant [father].

According to Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989), "the ends of justice exception is narrow and is to be used sparingly." In order to apply the exception, father must prove that the error below was "clear, substantial and material." Id. Furthermore, the record "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

The record before this Court does not show that a miscarriage of justice occurred in the trial court's custody determination. While the trial court did not make an *explicit* finding of a material change in circumstances, it did specifically find that several circumstances had changed since the initial custody determination. The father had become involved in an adulterous relationship to which the child was exposed, father's work schedule had entailed increased sea duty, and the mother had experienced the positive changes of a more stable living arrangement and new employment. Because credible evidence existed for the trial court's determination, the trial court's determination will not be disturbed on appeal. See Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) ("Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.").

## II. Best Interests of the Child

Father also contends that the trial court erred in modifying the earlier custody decree without properly considering the factors set forth in Code § 20-124.3 to determine whether a change in custody was in the best interests of the parties' child.

The trial court's custody determination is "entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988).

Code § 20-124.2(B) requires that the trial court "shall give primary consideration to the best interests of the child." Code § 20-124.3 states: "[I]n determining best interests of a child for purposes of determining custody or visitation arrangements . . . the court shall consider" the statutory factors. While the trial court must examine the factors, it is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

Here, the trial court stated in its order that it "consider[ed] . . . the factors set forth in [Code § 20-124.3] and [gave] particular weight to the living arrangements of [father]" in determining that it was in the child's best interests that mother have primary custody. At the June 21, 2005 custody hearing, the court addressed each of the statutory factors in its ruling. The court emphasized that mother was gainfully employed, lived with her mother in a home "quite conducive for rearing a child," that the father was somewhat inflexible regarding visitation, that his military service subjected him to being "called to sea or called to duty" with little notice, and that father was "living in an open and obvious relationship" with another woman.

We hold the trial court's decision was based on a proper consideration of the evidence as it related to the statutory factors, and that evidence supports the conclusion reached. We cannot say that this decision was plainly wrong; thus, we affirm the trial court's determination that the best interests of the child are served by transferring custody to the mother.

### III. Child Support

#### A. Shared Custody Guidelines

Father contends that the trial court erred in refusing to determine the amount of child support using the shared custody guidelines, as the court's visitation order allows him to have the child over 90 days each year.

Code § 20-108.2 governs the determination of child support. According to the statute, "[t]here shall be a rebuttable presumption in any judicial or administrative proceeding for child support . . . [including cases involving shared custody] . . . that the amount of the award which would result from the application of the guidelines set forth in this section is the correct amount of child support to be awarded." Furthermore, Code § 20-108.2(G)(3)(a) states that the shared custody guidelines are to be used "where a party has custody or visitation of a child . . . for more than 90 days of the year, as such days are defined in subdivision G 3 (c)." The statute defines a "day" for purposes of determining shared custody as "a period of 24 hours" and goes on to explain:

> where the parent who has the fewer number of overnight periods
> during the year has an overnight period with a child, but has
> physical custody of the shared child for less than 24 hours during
> such overnight period, there is a presumption that each parent shall
> be allocated one-half of a day of custody for that period.

Code § 20-108.2(G)(3)(c).

This Court has held that the "starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed" pursuant to the statutory schedule. Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991); see also Pharo v. Pharo, 19 Va. App. 236, 239, 450 S.E.2d 183, 184-85 (1994). The trial court may then adjust that amount based on the factors found in Code §§ 20-107.2 and 20-108.1. The statute requires that such adjustments "be supported by written findings which state why the application of the guidelines . . . would be unjust or inappropriate . . . ." Code § 20-108.1(B). Furthermore, the order "must identify the factors that justified deviation . . . and explain why and to what extent the factors justified the adjustment" in "enough detail and exactness to allow for effective appellate review of the findings." Richardson, 12 Va. App. at 22, 401 S.E.2d at 897.

The statute also permits deviation from the shared custody guidelines when the trial court makes "written findings in the order . . . that [their] application . . . would be unjust or inappropriate

. . . as determined by relevant evidence pertaining to the [statutory] factors." Code § 20-108.2(A). Furthermore, no shared custody "calculation . . . shall . . . create or reduce a support obligation to an amount which seriously impairs the custodial parent's ability to maintain adequate housing and provide other basic necessities for the child." Code § 20-108.2(G)(3)(c).

Here, the trial court's order specified father's visitation as follows:

> [I]n odd years, the month of July and in even years, the month of August; every even year Thanksgiving for one week, or if the child is in school from the Wednesday before Thanksgiving Day until the Sunday immediately following Thanksgiving Day; every odd year Christmas and New Year break for two weeks, or if the school break is less than two weeks, from the child's release from school until the day before her return to school; every odd year Winter Break which period shall be defined by the school district in which the child resides; every even year Spring Break which period shall be defined by the school district in which the child resides; and two weekends per month from Friday through Sunday in the child's home state . . . .

At the July 22, 2005 child support hearing in this case father stated, "I'm not certain that the visitation that we have agreed upon today is in excess of 93 prior days . . . . If it is in excess of 93 prior days we would need to impute shared custody support guidelines." The trial judge responded, "No, we're not going to do it unless affirmatively approved. We're going on the basis that he pays $483 a month starting August 1."

It is impossible to determine from the trial court's order whether the shared custody guidelines are applicable in this case. Assuming, without deciding, that the two weekends per month consist of full 48-hour periods each, "Christmas and New Year Break" and the "Winter Break" referenced in the order refer to the same two-week period, and allowing one week for Spring Break and Thanksgiving since the child is not yet school-aged, this order provides that the father will have the child for 93 days each year. If, however, the trial judge did not intend the two weekends as full 48-hour periods each, the threshold for shared custody is not met. See Ewing v. Ewing, 21 Va. App. 34, 37-38, 461 S.E.2d 417, 418 (1995) (holding father did not establish that the

- 6 -

divorce decree granted him visitation rights for more than the then-required 110 days of the year). This Court rejected father's argument that a "day" consisted of "the majority of the time as between each parent during any 24 hour period which period shall include an overnight" and instead determined that a "day" is a continuous 24-hour period for the purposes of determining shared custody. This definition was subsequently codified at Code § 20-108.2(G)(3)(c)).

As the trial court's visitation order is susceptible to two rational readings, this issue must be remanded to the trial court for clarification. See Pharo, 19 Va. App. at 240, 450 S.E.2d at 185 (reversing and remanding when trial court's order "provided insufficient written support for the result and precluded a meaningful appellate review of the findings and related award"). If the trial court decides that its order provides father with over 90 days of visitation per year, it must first determine the amount of support using the shared custody guidelines. If the trial court then finds that the shared custody guidelines are inappropriate in this case, it must make written findings consistent with the requirements of Code § 20-108.2 as discussed above.

### B. Gross Income Determination

Finally, father argues that the trial court erred by refusing his request to "reduce his gross income, for guidelines purposes, by the amount of the meal allowance deducted from his income by the United States Navy."

It is well settled that "[d]ecisions concerning both [spousal and child] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

According to Code § 20-108.2(C), gross income "means all income from all sources." The statute then goes on to exclude from gross income reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business as well as income from

public benefits, federal supplemental security income benefits, child support received, and secondary employment income in certain situations.  See id.

Father's Navy meal allowance does not meet any of the statutory exclusions.  Father does not provide, nor can this Court find, any statutory authority or precedent indicating that the trial court erred in including the meal allowance in father's income.  Furthermore, the evidence in the record supports the trial court's conclusion.  During the July 22, 2005 hearing, the trial court accepted mother's argument that "[father] keeps the allowance so it's still income to him.  Someone gives you a card to use, that's income.  They give him food to eat."  Mother also emphasized that father had previously included the meal allowance in his gross income when he had primary custody.

Thus, we affirm the trial court's finding that father's Navy meal allowance should be included in his gross income as it was supported by the evidence and was not plainly wrong.

## IV.  Conclusion

For these reasons, we affirm the trial court's decisions regarding child custody and gross income, and reverse and remand for the trial court to clarify its visitation order and determine whether the shared custody guidelines are applicable in this case.

Affirmed in part,
reversed and remanded in part.

Benton, J., concurring.

I concur in Parts II and III of the opinion and in the judgment affirming the trial judge's transfer of custody to the mother and determination of the husband's gross income. I further concur in remanding this case to the trial judge for clarification of the visitation order and resulting child support award.

I would hold, however, that the father's trial attorney properly preserved for appeal the issue whether the trial judge erred in transferring custody of the parties' minor child to the mother without first finding a material change in circumstances. Like the majority, I would affirm the trial judge's decision on the custody issue, but I would do so after reaching the merits of the issue. Therefore, I do not join in Part I of the majority opinion.

This appeal arises from a proceeding in which the mother filed a motion "for a change in custody" of the minor child from the father to the mother. In an opening statement, the mother's attorney argued that the issue was the "best interest of the child." At the conclusion of the evidence, the mother's attorney again argued that the issue was "the best interest of this child."

Though the mother argued that the sole issue was "best interest of the child," the father's attorney responded in his opening statement that "*we don't feel that there have been any material changes in circumstances*." (Emphasis added). Likewise, the father's attorney's first sentence in his closing argument was: "*Your Honor, in reviewing the evidence today, the court must consider whether there have been any material change in circumstances since June of 2004* [the date of the order awarding custody to the father]." (Emphasis added). In addition to this argument, the father's attorney offered various examples throughout closing argument of how the circumstances had not materially changed since the judge's previous award of custody of the child to the father.

These arguments by the father's trial attorney were sufficient to preserve for appeal the issue he now raises on appeal: "The Court erred, as a matter of law, in transferring custody of . . . [the] minor child of the parties from [the father] to [the mother] without finding a material change in circumstances." Although the father's trial attorney did not note this issue as an objection on the final order, a party need not always note an objection on the final order to preserve an issue for appeal.

> The purpose of the contemporaneous objection rule embodied in Rule 5A:18 is to inform the trial judge of the action complained of in order to give the judge the opportunity to consider the issue and to take timely corrective action, if warranted, in order to avoid unnecessary appeals, reversals and mistrials.

Robinson v. Commonwealth, 13 Va. App. 574, 576, 413 S.E.2d 885, 886 (1992). By statute, "[f]ormal exceptions to rulings or orders of the Court shall be unnecessary." Code § 8.01-384(A). This statute expressly provides that "[a]rguments made at trial via . . . oral argument reduced to transcript . . . shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal." Id. Significantly, the statute further provides that "[n]o party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court." Id.

In a circumstance analogous to this case, the Supreme Court of Virginia noted in Ward v. Insurance Co. of North America, 253 Va. 232, 233 n.1, 482 S.E.2d 795, 795 n.1 (1997), that Code § 8.01-384 obviates the need to continually repeat the objection or to note a formal objection on the final order. It held:

> We find no merit in the defendants' argument that Ward's appeal should be dismissed because she failed to object to the entry of the trial court's order. The record is clear that Ward argued to the trial court that her cause of action was not barred by the statute of limitations. Ward was not required to make a formal exception to

> the trial court's order because the court was aware of her
> objections.

Id. (citing Code § 8.01-384).  See also Richmond Dept. of Soc. Servs. v. Carter, 28 Va. App.

494, 497, 507 S.E.2d 87, 88 (1998) (rejecting appellee's argument that appellant failed to

preserve standard of proof issue for appeal and holding that the argument was "meritless"

because "[o]nce the objection was made at trial, the [appellant] was not required to make it again

to preserve the issue . . . [under] Code § 8.01-384(A)"); Brown v. Commonwealth, 23 Va. App.

225, 229-30, 475 S.E.2d 836, 838-39 (1996) (holding that arguments of trial counsel concerning

admissibility of hearsay evidence alerted the trial judge to the possibility of error and gave the

judge the opportunity to take corrective actions and that the arguments, therefore, were sufficient

as an objection to preserve the issue for appeal under Code § 8.01-384).

Turning to the substantive issue, I would assume without deciding that the trial judge was

required to find a material change in circumstances to change custody following entry of the

*pendente lite* custody order.[2]

---

[2] I would assume this issue because neither party adequately addresses the controlling law.  The father relies upon the general rule that, when a case involves a motion to change a prior custody order, "[t]he test to be met 'has two prongs:  first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interest[] of the [child].'"  Hughes v. Hughes, 33 Va. App. 160, 165, 531 S.E.2d 654, 656 (2000) (quoting Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983)), aff'd en banc, 35 Va. App. 376, 545 S.E.2d 556 (2001).  The father makes no distinction between *pendente lite* orders and final orders.
　　The mother contends, however, that no change in circumstances should be required to change custody from a *pendente lite* award.  She concedes she "can find no case in support of this proposition" and cites no statute or case law.
　　The record indicates the June 21, 2005 custody proceeding from which this appeal arises was not scheduled to be a hearing to determine a final custody order.  Rather, it was instituted by the mother upon a motion to hold the father in contempt for violating the *pendente lite* visitation order and upon a motion for a "change in custody" because of those violations.  In other words, it appears that this proceeding was also commenced as a *pendente lite* proceeding to adjust the earlier *pendente lite* custody order.
　　By statute, trial judges have authority to make *pendente lite* custody awards in pending divorce proceedings.  Code § 20-103.  The record in this case shows that the parties presented numerous witnesses at the initial evidentiary hearing in support of the *pendente lite* custody

- 11 -

As a governing principle, a trial judge determining custody "must identify the fundamental, predominating reason or reasons underlying its decision." Kane v. Szymczak, 41 Va. App. 365, 372-73, 585 S.E.2d 349, 353 (2003). Although the trial judge in this case did not explicitly state that the evidence proved a material change in circumstances, the trial judge found that "the pendente lite order [previously awarding custody to the father] was given based upon the evidence that the court heard at that time." The judge also noted that "[w]hen [the father] left court, after [the judge] had given [the father] custody [by *pendente lite* order], [the father] knew or . . . should have known that [he] could lose custody based upon how [he] conduct[ed] [him]self." The judge further found that, since entry of the earlier *pendente lite* custody order, the father had become involved in an adulterous relationship of which the child was aware, the father's work schedule changed such that he was required to spend additional time at sea, and the mother had made positive changes in her life.

These findings demonstrate that the trial judge was aware of and applied the proper standard. Thus, I would affirm the trial judge's transfer of custody based upon a review of the merits of the issues presented by the father's appeal.

---

award. At the conclusion of the lengthy hearing, the trial judge made extensive findings in support of the initial *pendente lite* award of custody to the father. At that time, the trial judge "found that it is in the best interest of the child for the child to be with the father," and the trial judge relied upon "the statutory factors as set forth in [Code] § 20-124.3" to guide his decision. In addition to custody, the order comprehensively covered support for the two-year-old child until she "turns eighteen (18) years of age" with all of the usual provisions contained in a final custody and support order.

Neither party has addressed whether the judge's factual findings at the first *pendente lite* hearing have preclusive effect as to the facts existing at the time of the first hearing. Further, neither party has addressed the statutory requirement that *pendente lite* "orders . . . shall have no presumptive effect and shall not be determinative when adjudicating the underlying cause." Code § 20-103(E). Significantly, neither party addressed whether this second custody hearing was also commenced as a second *pendente lite* determination of the child's custody. Simply put, these matters have been inadequately addressed by the parties.