UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Beales and Decker
Argued at Chesapeake, Virginia


KEITH A. KIDD

                                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2038-13-1                        JUDGE MARLA GRAFF DECKER
                                                                       JUNE 10, 2014
GWENDOLYN R. KIDD


             FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            Dean W. Sword, Jr., Judge

            Allyson D. Brown-Lee (The Law Office of Allyson Denise
            Brown-Lee, PLLC, on brief), for appellant.

            Alex T. Mayo, Jr. (Besianne Tavss Maiden; Tavss Fletcher, on
            brief), for appellee.


        Keith A. Kidd (the husband) appeals a final divorce decree of the circuit court.  On appeal,

he argues that the circuit court erred by:  ruling that he did not prove that Gwendolyn R. Kidd (the

wife) committed adultery; ruling that he condoned the wife's adultery; awarding spousal support

and equitable distribution to the wife; excluding his son's testimony; and awarding attorney's fees to

the wife.  The wife counters that the circuit court's rulings were correct and, consequently, she is

entitled to an award of appellate attorney's fees and costs.

        We hold that the circuit court was not plainly wrong in finding that the husband failed to

prove the wife's adultery by clear and convincing evidence.  Further, the court did not abuse its

discretion in finding that for equitable distribution purposes, the husband condoned any adultery

shown to have occurred.  Likewise, the circuit court did not abuse its discretion in fashioning the

equitable distribution and spousal support awards, as its determinations were reasonable in light of

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the record. Additionally, because the record does not contain a proffer of the excluded testimony of the husband's son, we do not consider his assignment of error challenging the exclusion of that testimony. Finally, the court did not abuse its discretion in awarding the wife attorney's fees, but there is no basis for requiring additional payment. Consequently, we deny the wife's request for appellate attorney's fees and costs incurred on appeal. Accordingly, we affirm.

## I. PROCEDURAL BACKGROUND

The parties married on October 4, 1985. After twenty-eight years of marriage, the husband petitioned for divorce on the ground of the wife's adultery. The wife filed a cross-claim for divorce on the grounds of cruelty and desertion, or alternatively, on the basis of living separately for more than one year. Both parties presented evidence at the one-day hearing.

The circuit court entered a final divorce decree based upon the parties' separation for a period of more than one year. The court held that the husband failed to present sufficient evidence to prove the wife's adultery as the ground for the divorce. The circuit court did, however, consider the wife's adultery for equitable distribution purposes, but ultimately found that it did not affect the equitable distribution award due to condonation. The court awarded each party thirty percent of the marital share of the other party's pension. After concluding that the wife was entitled to spousal support and that the husband had the ability to pay such support, the court awarded the wife $900 per month. Further, in light of the "financial needs and resources of each party," the court awarded the wife attorney's fees in the amount of $1,200. The husband appealed the final order.

## II. ANALYSIS

The husband challenges the circuit court's findings related to adultery, awards of spousal support and equitable distribution, exclusion of his son's testimony, and award of attorney's fees. The wife asks for an award of attorney's fees and costs associated with this appeal.

## A. Adultery as Basis for Divorce

The husband contends that he presented evidence sufficient to prove that the wife committed adultery with Anthony Smith. The wife responds that the record supports the circuit court's ruling that evidence of adultery was not "clear and convincing," as required by law.

The record establishes that the parties' marriage was tumultuous. Over the course of the marriage, they separated five times. They reconciled after the first four separations, with periods of separation ranging from approximately six months to one year. Their fifth and final separation occurred sometime in 2011.

The husband introduced testimony from Beverly Smith about the wife's relationship with her husband Anthony Smith. Beverly Smith suspected her husband of having an affair with the wife, which continued to exist even at the time of the hearing. Ms. Smith testified that the wife apologized to her, as well as told her that Anthony was "playing" them, "playing both ends of the stick," and that he "need[ed] peace and space." She also stated that she and Anthony Smith were separated. Although she testified that she had "personal knowledge" that the wife and Smith were in an "intimate relationship" at the time of the hearing, she did not explain the basis for her belief.

The husband testified that the wife admitted to having an affair with Anthony Smith. He stated that Smith took the wife to her cancer treatment appointments. When the parties reconciled in 2010, the wife promised to stop all contact with Smith. However, she did not keep that promise. The husband testified that he believed that the wife and Smith continued "the relationship," even at the time of the hearing. According to the husband, he found Smith's "sex pill" in 2011 when he "cleared the apartment out." The husband also saw the two together in public "all the time." Further, the husband testified that the wife told him she and Smith planned to marry.

The wife testified and denied being intimate with Smith. She explained that she and Smith were "the best of friends" and that she lived with him for over a year. The wife further explained

that they had separate bedrooms and divided the rent. The parties' daughter, Jessica Kidd, testified that Smith was a "friend of the family." Jessica also testified that she was "aware of a relationship" between the wife and Smith. At the time of the hearing, the wife lived with Jessica and Jessica's son, even though her name was not on the lease. Although the wife sometimes parked her car overnight at Smith's apartment, she testified that she did not spend the night at Smith's residence but parked there due to the possibility of her car getting towed in front of her apartment.[1]

The circuit court, after hearing all of the testimony, found that the evidence was not sufficient to prove that the divorce should be granted on the ground of adultery. The court specifically explained its decision, stating for the record that the evidence did not "rise[] to the standard to make a finding that divorce should be granted on the ground of adultery." The court noted that Beverly Smith's testimony was "not particularly helpful . . . [or] relevant."

It is well settled that this Court will not set aside a circuit court's factual finding unless it is "'plainly wrong or without evidence to support it.'" Hughes v. Hughes, 33 Va. App. 141, 146, 531 S.E.2d 645, 647 (2000) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). If credible evidence in the record supports the circuit court's findings, this Court "'may not retry the facts or substitute our view of the facts for those of the trial court.'" Congdon v. Congdon, 40 Va. App. 255, 266, 578 S.E.2d 833, 838 (2003) (quoting Calvin v. Calvin, 31 Va. App. 181, 183, 522 S.E.2d 376, 377 (1999)). "[T]he trier of fact ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

---

[1] The wife and Jessica testified that Jessica and Anthony Smith were named on the lease. The wife testified that this apartment, which she shared with Jessica and Jessica's son, was approximately fifteen minutes away from Smith's. She explained that when she parked at Smith's apartment, Smith would drive her to her own apartment for her to sleep, drive back to his home, and pick her up to drive her to her job in the morning.

The legal standard regarding adultery is equally clear. "'One who alleges adultery has the burden of proving it by clear and convincing evidence.'" Hughes, 33 Va. App. at 146, 531 S.E.2d at 647 (quoting Seemann v. Seemann, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987)). Even "strongly suspicious circumstances" are insufficient to establish adultery. Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975). "[I]n determining whether clear and convincing evidence supports a finding of adultery, the Supreme Court and this Court have consistently reviewed the record to determine not only whether the evidence merely established suspicious conduct, but also whether a credible explanation existed for the circumstances." Hughes, 33 Va. App. at 150, 531 S.E.2d at 649; see also Dooley v. Dooley, 222 Va. 240, 246, 278 S.E.2d 865, 868-69 (1981) (holding that the lower court erred in finding adultery where the evidence had a possible innocent explanation).

Most of the evidence presented to the court was the contradictory testimony of the parties. It is clear from the record that for purposes of the "clear and convincing" standard, the circuit court did not accept the husband's testimony that the wife admitted to a sexual relationship with Anthony Smith. The court did not abuse its discretion in rejecting this portion of the husband's testimony. See Street, 25 Va. App. at 387, 488 S.E.2d at 668 (explaining that the trier of fact has the discretion to reject "any of the witness' testimony").

The wife testified that she lived with Smith as friends during her course of cancer treatment. She additionally testified that the husband refused to help care for her while she received cancer treatments or even accompany her to surgery. The husband testified that Smith took her to her medical appointments. Although the wife and the husband provided very different stories from each other, there is no dispute that the wife and Smith had and, in fact, continue to have a close relationship. The evidence could lead to a variety of different conclusions, including that the wife lived with Smith platonically for financial support and other help while she underwent her cancer

treatments and thereafter. Because the circuit court could conclude that the evidence supported an explanation for the wife's actions other than adultery, we cannot say that the circuit court erred in its role as factfinder in determining that the husband failed to prove by clear and convincing evidence that the wife committed adultery.

The husband highlights Jessica's testimony that the wife and Smith were "in a relationship." This testimony, although indicative of a close relationship, does not elaborate on the type of relationship, nor does it prove that a physical relationship existed. The husband also relies upon Beverly Smith's testimony that the two were in an "intimate relationship" at the time of the hearing. However, the circuit court did not err in finding that Beverly Smith's testimony was "not particularly helpful," because Smith did not explain the basis for her belief, and she was admittedly the separated spouse of the alleged paramour. Finally, we note that the existence of Smith's bottle of erectile dysfunction medication, while tending to prove that Smith engaged in sexual activity, did not prove by clear and convincing evidence that the wife was his partner.

The circuit court heard the testimony at an *ore tenus* hearing. Consequently, "'its factual findings are entitled to great weight'" on appeal. Mayer v. Corso-Mayer, 62 Va. App. 713, 728, 753 S.E.2d 263, 270 (2014) (quoting Mullin v. Mullin, 45 Va. App. 289, 299-300, 610 S.E.2d 331, 336 (2005)). The court "'ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony.'" Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting Street, 25 Va. App. at 387, 488 S.E.2d at 668). "'[T]he decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record.'" Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003) (quoting Sutherland v. Sutherland, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992)).

Reviewing the record, we conclude that a credible theory existed to explain the circumstances of the wife's cohabitation and close relationship with Smith. Therefore, this Court will not hold that the circuit court erred in finding that the evidence did not rise to the clear and convincing level of proof necessary to establish adultery as a basis for divorce.

### B. Condonation

The husband argues that the circuit court erred by finding that he condoned any adultery that the wife committed. He focuses on his "condition" to the 2010 reconciliation that the wife was to have no further contact with Smith. The husband suggests that the evidence proved that the wife's failure to keep her promise to cease contact with Anthony Smith nullified his earlier condonation. The wife maintains that the husband misrepresents the circuit court's holding, in that it considered the condonation defense only to the extent that the adultery related to equitable distribution.

The record supports the conclusion that the circuit court considered the wife's adultery for equitable distribution purposes, but ultimately found that it did not affect the equitable distribution award due to the husband's condonation. This consideration was in contrast to the circuit court's finding, under the dissimilar clear and convincing standard, that the evidence of adultery presented by the husband was insufficient to prove adultery as a ground for the divorce.[2] Taking into account the entire record before it, the court discussed the factors listed in the equitable distribution statute. The court found:

> A third separation occurred in August, 2008 when the husband discovered his wife was having sexual relations with A. Smith. This separation lasted until December 2008 when the parties reconciled, giving the wife a condonation defense to the adultery charge.

---

[2] We note that the husband's challenge to the circuit court's condonation findings fails to the extent that he believes the circuit court applied the condonation defense to bar granting the divorce on the basis of adultery. The court clearly did not consider condonation as related to the basis for the divorce, in view of its finding that the evidence was not sufficient to prove adultery under the "clear and convincing" standard.

> A fourth separation began in December, 2009 which last[ed] about 10 months and the issue of additional adultery by the wife arose again. Again the husband agreed to reconcile giving rise to a second defense of condonation.

The circuit court's "equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)).

In making factual determinations relevant to an equitable distribution award, a circuit court acts within its discretion as long as the evidence in the record would allow a reasonable jurist to reach the same conclusions. See, e.g., Wright v. Wright, 61 Va. App. 432, 463-64, 737 S.E.2d 519, 534 (2013). In other words, credible evidence must support the findings made by the court. See, e.g., Calvin v. Calvin, 31 Va. App. 181, 183, 522 S.E.2d 376, 377 (1999). The law makes clear that the standard for proving adultery for purposes of providing a basis for divorce is higher than it is when used as a factor for equitable distribution purposes. Thus, the law permits a circuit court to find that a spouse has failed to meet the higher burden of proof as to the basis for the divorce, but to consider adulterous behavior as proved insofar as it relates to the equitable distribution determination. That is exactly what happened here.

To the extent that the husband challenges the circuit court's condonation findings as related to equitable distribution, we review "'the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" Hamad v. Hamad, 61 Va. App. 593, 596, 739 S.E.2d 232, 234 (2013) (quoting White v. White, 56 Va. App. 214, 216, 692 S.E.2d 289, 290 (2010)). "[T]he abuse of discretion standard, which governs our decision here, means that 'a reviewing court [must] show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance.'"

Wiencko, 62 Va. App. at 235, 475 S.E.2d at 177 (quoting Lawlor v. Commownealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239.

In this case, the court found that the husband condoned any adultery committed by the wife when he reconciled with her in 2008 and 2010. It held that the husband did not prove that the wife committed any further adultery in 2011 preceding the fifth and final separation. Condonation is "'the remission, by one of the married parties, of an offense which he knows the other has committed against the marriage, on the condition of being continually afterward treated by the other with conjugal kindness.'" Cutlip, 8 Va. App. at 621, 383 S.E.2d at 275 (quoting Owens v. Owens, 96 Va. 191, 195, 31 S.E. 72, 74 (1898)). However, "[c]ondoned adultery is revived where the guilty party resumes his association with his paramour." Id.

There was evidence presented at the hearing related to condonation. The parties reconciled in 2010, conditioned upon the wife's promise to stop all contact with Smith. They then separated sometime in 2011. The only evidence that the husband presented suggesting an affair between the 2010 reconciliation and the 2011 separation was his own testimony. He claimed that: (1) when they separated in 2011, the wife told him that she was moving in with Smith, loved him, and that they planned to marry; and (2) when the husband "cleared the apartment out" in 2011, he found Smith's bottle of erectile dysfunction medication. The other evidence that tended to show some type of relationship between the wife and Smith either did not have a specified period of time associated with it or tended to prove a relationship before the parties' 2010 reconciliation or after their 2011 separation.

The circuit court did not abuse its discretion in rejecting the portion of the husband's testimony stating that the wife intended to move in with Smith and marry him, because contradictory testimony tended to show that the wife moved in with her daughter and grandson

rather than Smith. See Street, 25 Va. App. at 387, 488 S.E.2d at 668. As for the husband's discovery of the medication bottle, the date on the bottle was February 2010. The parties reconciled in October or November of 2010. It is unclear from the record whose apartment the parties lived in upon their subsequent reconciliation. Thus, it is possible that the medication remained in the apartment from a time prior to their final reconciliation. Regardless, the court was entitled to reach any number of conclusions relating to the pill bottle based on all of the other evidence in the record, including that Smith could have had a paramour other than the wife.

Viewing the record in the light most favorable to the wife, who prevailed below, the evidence supports the circuit court's findings that condonation applied to any adultery preceding the 2010 reconciliation and the husband did not prove any further adultery preceding the final separation in 2011. Therefore, the circuit court did not abuse its discretion.

### C. Spousal Support and Equitable Distribution

The husband argues that the circuit court erred by awarding the wife spousal support and equitable distribution. He asserts that the wife lives with her "paramour in a relationship tantamount to a marriage and receives financial support from him." He also alleges that the wife's conduct caused the dissolution of the marriage and she did not need spousal support because she had her own resources and her expenses were inflated. The wife responds that relevant evidence supported the spousal support and equitable distribution awards.[3]

---

[3] The wife also counters that the husband failed to properly present his assignment of error by neglecting to include any relevant authority as to his cohabitation argument. The husband's brief relies on the provision of Code § 20-109(A) that spousal support may end if the receiving party "has been habitually cohabitating with another person in a relationship analogous to marriage for one year or more." The wife declines to address the husband's cohabitation argument because Code § 20-109 "applies to modification of the initial award" and "is in no way applicable to this case." Rule 5A:20(e) requires that an appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." We conclude that the authorities cited by the husband support by analogy his proposition that just as cohabitation in a relationship analogous to marriage can trigger termination of spousal support, it should function as a factor preventing awards of spousal support and equitable distribution. Therefore, this assignment of error is not procedurally barred.

The circuit court awarded the wife $900 a month in spousal support based on her financial need and the husband's ability to pay. The court also awarded each party thirty percent of the other party's pension when it fashioned the equitable distribution award. The court explained that its decision was "largely influenced by the 'needs and financial resources of the parties,' the other factors being somewhat neutral."

This Court will not disturb a spousal support award absent an abuse of discretion. Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983); Fox v. Fox, 61 Va. App. 185, 203, 734 S.E.2d 662, 671 (2012). Similarly, as already noted, this Court will not overturn a circuit court's equitable distribution award unless the circuit court abused its discretion, misapplied the equitable distribution statute, or lacked evidence to support the award. Wiencko, 62 Va. App. at 229-30, 745 S.E.2d at 168. "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239.

The statute governing spousal support awards provides that the circuit court shall consider the "obligations, needs and financial resources of the parties," their standard of living during the marriage, the duration of the marriage, the parties' physical and mental conditions, their contributions to the well-being of the family, their property interests, their earning capacities, the equitable distribution provisions, and any other relevant factors. Code § 20-107.1(E). In determining equitable distribution, a court must consider the parties' contributions to the well-being of the family and marital property, the duration of the marriage, the parties' physical and mental conditions, the circumstances contributing to the dissolution of the marriage, the acquisition of marital property, the parties' debts, the character of all marital property, tax consequences to the parties, any use of marital property for a nonmarital purpose when done in anticipation of divorce, and other relevant factors. Code § 20-107.3(E). "[A]s long as the trial court considers all the factors, it is at the court's discretion to determine what weight to give each factor when making the

equitable distribution award." O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526, 458 S.E.2d 323, 325 (1995).

In support of his argument that the circuit court erred by awarding the wife spousal support and equitable distribution, the husband focuses on: his allegation that the wife cohabitated with Anthony Smith in a relationship analogous to marriage at the time of the hearing, the wife's conduct leading to the dissolution of the marriage, and her financial needs. In the court below, the husband attempted to prove that the wife and Smith lived together at the time of the hearing. He showed that Smith's name was on the lease for the apartment where the wife lived and that Smith habitually paid at least half of the wife's rent.

The testimony of the wife and her daughter, however, contradicted the allegation that the wife and Smith lived together. The wife testified that she shared the apartment with her daughter and Smith lived elsewhere, even though his name was on the lease and hers was not on the lease. The daughter's testimony that she lived in the apartment with her child and the wife and that her name was on the lease with Smith's corroborated the wife's testimony. As the fact finder, the circuit court was entitled to accept their testimony over that of the husband. See Street, 25 Va. App. at 387, 488 S.E.2d at 668.

The husband also alleges that the wife's conduct, other than her relationship with Smith, caused the dissolution of the marriage and had a negative impact on the family. However, the wife's alleged conduct that the husband contends eroded the marriage was not shown to have led to the parties' final separation in 2011. The wife's 1989 assault and battery of the husband occurred twenty-two years before their final separation. The husband did not specify when the wife opted to get her own apartment instead of use her money to save the marital house from foreclosure, or when she changed the locks on the apartment without giving him a key. The record simply does not

- 12 -

compel the conclusion that the wife caused the dissolution of the marriage or that the circuit court abused its discretion in declining to make that finding.

As to the parties' financial resources and needs, both parties were employed full-time. Evidence established that the wife's annual income was $34,653.32, and the husband's was $78,537.16. The circuit court found that the husband earned approximately $44,000 more a year than the wife.

The wife submitted evidence that her expenses were $3,290 a month. At the time of the hearing, the wife's cancer was in remission, but she had diabetes and a plethora of other medical conditions requiring her to take between fifteen and twenty pills each day. The wife could not afford rent. She testified that both Smith and her father provided her financial support. The husband cross-examined her about her expenses, and she admitted that she did not pay $100 for eyeglasses every month. The wife also admitted that the property tax was a yearly, not monthly, expense. Cross-examination similarly elicited testimony that she did not always pay $125 a month for gifts.

The circuit court concluded that the wife's stated expenses were inflated and that her monthly living expenses actually totaled $2,663, which still exceeded her income by $900 a month. The court clearly considered the wife's evidence as to her expenses as well as flaws in her calculations that were reflected in her testimony on cross-examination. The circuit court made an independent determination of the wife's monthly expenses, and the record supports that determination.

For these reasons, the circuit court's determinations as to the parties' respective financial resources and needs were reasonable. Because the circuit court's determinations were supported by the record, we hold that it did not abuse its discretion in fashioning the spousal support and equitable distribution awards.

*D. Exclusion of Testimony*

The husband argues that the circuit court erred by not allowing his adult son to testify about the son's relationship with the wife and how she treated him during the parties' marriage. During the hearing, the husband offered his son's testimony as rebuttal evidence to the wife's statement that he was abusive to his son. The son testified that he lived with the parties for approximately ten years, but left their home in 1996. He stated that he was removed from the home for child abuse. The circuit court inquired as to the relevance of the testimony. The husband told the court that he was attempting to show the cause of the dissolution of the marriage for purposes of spousal support and equitable distribution. The court excluded the testimony, concluding that "it is just too far removed for it to be of any relevance in resolving this case." The son did not testify further. The husband did not proffer the excluded alleged testimony for the record.

"When evidence is excluded by the court, the aggrieved party must make a proper proffer of the excluded testimony to preserve the ruling for appellate review." Klein v. Klein, 11 Va. App. 155, 160, 396 S.E.2d 866, 869 (1990); see also Galumbeck v. Lopez, 283 Va. 500, 507, 722 S.E.2d 551, 555 (2012). This is an important requirement which enables appellate review. "When testimony is delivered but excluded upon objection," this Court, upon review, "has a record of the content . . . of the testimony upon which to determine the propriety of the trial court's ruling."[4] Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). In contrast, "when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Id. Without any proffer of the expected testimony, this Court will not consider a challenge to a circuit court's ruling excluding testimony. See, e.g., Klein, 11 Va. App. at 160, 396 S.E.2d at 869. The record here fails to contain a proffer as to what the son's

---

[4] "Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (alteration in original).

testimony would have been and thus does not provide this Court a basis from which to determine whether the circuit court properly excluded the testimony. Therefore, we do not consider this assignment of error.

### E. Award of Attorney's Fees to the Wife

The husband argues that the circuit court erred by awarding attorney's fees to the wife, especially considering her alleged misconduct during the marriage. The wife contends that the circuit court did not abuse its discretion in awarding her fees.

This Court reviews a circuit court's award of attorney's fees for an abuse of discretion. Fadness v. Fadness, 52 Va. App. 833, 848, 667 S.E.2d 857, 865 (2008). "The key to determining a 'proper award of [attorney's] fees is reasonableness under all the circumstances.'" Milot v. Milot, 62 Va. App. 415, 426, 748 S.E.2d 655, 660 (2013) (alteration in original) (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)). "In light of the discretion allotted to the trial court in determining the award of attorney's fees, this Court will not disturb the trial court's finding when it properly considered the circumstances of the case." Id. In this case, we cannot say that the circuit court abused its discretion after considering the parties' financial needs and resources, as discussed *supra* in Part II.C. We also cannot say that there was no credible evidence to support its decision to award the wife attorney's fees. Consequently, the award remains undisturbed.

### F. Attorney's Fees and Costs on Appeal

The wife asks for an award of attorney's fees and costs associated with this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin, 23 Va. App. at 695, 479 S.E.2d at 100. The husband's appeal was not frivolous and addressed "appropriate and substantial issues." See Estate of Hackler v. Hackler, 44 Va. App. 51,

- 15 -

75, 602 S.E.2d 426, 438 (2004). Nor did the husband "generate[] unnecessary delay or expense in pursuit of [his] interests." Id. Additionally, the wife fails to provide reasons requiring payment of further fees or costs by the husband. Therefore, we deny the wife's request for an award of fees and costs in this appeal.

## III. CONCLUSION

The circuit court was not plainly wrong in determining that the husband failed to prove adultery by clear and convincing evidence. There is credible evidence to support the court's findings that condonation applied to any adultery occurring before the parties' 2010 reconciliation and that the husband failed to prove any further adultery leading to their final separation in 2011. Additionally, the court did not abuse its discretion in fashioning the spousal support and equitable distribution awards. We do not consider the husband's challenge to the exclusion of his son's testimony because the record does not contain a proper proffer of that alleged testimony. Finally, we cannot say that the circuit court abused its discretion in awarding the wife attorney's fees. Consequently, we affirm the decision of the circuit court.

Affirmed.